## CHASE v. ANGELL.[1]

1. APPEAL AND ERROR—REVIEW—QUESTIONS CONSIDERED—IMMA-
TERIAL MATTERS.

Where, on a bill for dissolution of a partnership and for an accountimg, this court finds that the proof sustains the claim of copartnership, the question whether the fact of partnership is settled by an interlocutory decree of the circuit court from which no appeal was taken, will not be decided.

2. PARTNERSHIP — EXISTENCE OF RELATION — EVIDENCE — SUFFI-
CIENCY.

On a bill for dissolution of a partnership and for an accounting, evidence examined, and *held*, to show that the parties agreed to go into partnership upon equal terms in the business of platting, improving, and selling lots from a tract owned by one of them, and that they actually entered upon the business of the partnership, each doing work, putting in funds, and incurring joint indebtedness in the firm name.

3. STATUTE OF FRAUDS—CONTRACTS FOR THE SALE OF LAND—
PARTNERSHIP—PART PERFORMANCE.

Where a parol partnership to plat, improve, and sell lots from a tract of land owned by one of the parties has been in part performed by the parties entering upon the business of the partnership, each doing work, putting in funds, and incurring joint indebtedness in the firm name, the statute of frauds is not an insuperable objection to treating the lands as a part of the assets of the partnership.

4. PARTNERSHIP—DISSOLUTION—ACCOUNTING—EQUITIES.

Where upon an accounting between partners in the business of platting and selling lands it appears that they agreed orally that a certain lot might be withheld from the partnership control upon fair terms, equity requires that the arrangement

---

* Continued from Vol. 147.    [1] Rehearing denied April 17, 1907.

be carried out upon a reasonable division of values as they then existed, though the terms of withdrawal of the lot were never agreed upon.

5. DOWER — INCHOATE RIGHT — LANDS SUBJECT — PARTNERSHIP PROPERTY.

Where prior to the time the parties to a parol partnership to plat and sell lands belonging to one of them entered upon performance thereof, necessary to take it out of the statute of frauds, the partner owning the land acquired a domicile in this State, his wife had an inchoate right of dower in the lands, notwithstanding the partnership.

6. SAME—RIGHT TO DOWER—ESTOPPEL BY ACTS OF HUSBAND.

Representations by a husband before the board of review, though improper, can have no effect as an estoppel of his wife to claim dower in lands of which he is seized.

7. SAME.

The husband cannot, by any act of his, prejudice his wife's right of dower.

8. PARTNERSHIP—LANDS—ASSETS—TITLE.

Where each of the partners of a firm has a legal title to land owned by them as part of the firm assets, such land is held in common subject to a liability to have it applied to partnership obligations and accounting, each having a lien on the interest of his copartner for any balance due him.

9. SAME—PARTITION.

On dissolution of a partnership, real estate constituting part of the firm's assets, may be divided by compulsory partition, if it be shown that it will not be required to satisfy liabilities of the firm.

10. SAME—COMPELLING CONVEYANCE.

A partner holding the legal title to land constituting part of the assets of the firm holds it in trust for the uses of the firm, its creditors, and his copartner, and equity will compel such conveyance as the necessities of the business and the rights of his copartner require.

11. SAME — DOWER — PARTNERSHIP PROPERTY — SATISFACTION OF DOWER.

Where on dissolution of a partnership it appears that land constituting part of the firm's assets is subject to a prior right of dower in behalf of the wife of the partner holding the legal title to the land, a case is presented for the application of section 11100, 3 Comp. Laws, authorizing the court in parti-

tion proceedings to determine the value of the dower interest, and pay or secure it to the person entitled to it.

12. SAME—DISSOLUTION—DISTRIBUTION OF FUNDS.

Defendant, owning land subject to purchase money mortgages, entered into a copartnership with complainant to subdivide, improve, and sell it, and subsequently a bill was filed for dissolution of the partnership and an accounting. *Held*, that defendant's wife's inchoate right of dower was only in the equity of redemption, and that in the partition proceedings, provision must be made for (1) the mortgage; (2) the dower interest; (3) the payment of the debts of the partnership; (4) the balance which should be found between the accounts of the copartners; and (5) a division of the fund or land remaining (if all is not sold) between the copartners.

Cross-appeals from Ingham; Wiest, J. Submitted February 8, 1906. (Docket No. 105.) Decided September 20, 1906.

Bill by Charles H. Chase against Horace B. Angell and Clara E. Angell for the dissolution of a partnership and for an accounting. From the decree rendered, both parties appeal. Affirmed, and remanded for settlement of decree.

*Lyon & Moinet* ( *William A. Fraser*, of counsel), for complainant.

*James G. Kress* and *Kelly S. Searl*, for defendants.

HOOKER; J. The bill in this cause was filed to obtain the dissolution of a copartnership, and an accounting. Both parties have appealed. The learned circuit judge who heard the cause, heard proofs in open court, upon the subject of the existence of the copartnership, and rendered an interlocutory decree, determining that the relation existed, and referred the cause to a commissioner to take proofs and make a report upon the account. The report being filed, exceptions were taken by both parties, and, upon a final hearing, a decree was made settling the account and directing a sale of the copartnership property.

Before stating the questions that we are called upon to decide, a brief outline of facts will be made. The defendant Angell, while a resident of Seville, in Gratiot county, Mich., concluded to rent his farm, and take his family to the State of New York, which he did. Subsequently he purchased a parcel of land near the Agricultural College, at Lansing, Mich., with the design of platting and putting it upon the market. He negotiated with the complainant with a view to forming a copartnership in this venture, and the complainant came to Lansing and engaged with him in carrying out the project. The business was done in the name of Angell & Chase. A disagreement finally resulted in the filing of the bill.

The questions discussed are the following:

(1) Must the question of the existence of the copartnership relation be considered settled by the interlocutory decree, no appeal being taken therefrom, within the statutory period computed from the time of its entry?

(2) If not conclusive, was there a copartnership?

(3) If the parties were copartners, was any of the land included in the partnership assets?

(4) If so, was lot 80 included, and if not, upon what basis should it be excluded?

(5) Has Clara E. Angell an inchoate right of dower in the premises, as against the complainant? This is alleged to turn upon the place of residence of the defendants, at the time the copartnership relation is said to have been formed, which is in dispute?

(6) Whether a modification of the provisions for the sale of the property should be made?

(7) The allowance of $1,800 to the complainant for personal services is questioned.

(8) The right of defendant Horace Angell to the allowance of certain items relative to changes in a septic tank and sewer.

(9) Certain items of account which need not be here specified.

(10) Additional solicitor's fees to complainant.

In discussing these various questions the testimony will be referred to so far as deemed necessary, to make clear the facts found, upon which legal conclusions are based.

1. The Interlocutory Decree. The interlocutory decree, after reciting that the cause had been heard and argued, contains the following:

"And it appearing to the court that a partnership existed since July 1, 1901, and exists between Charles H. Chase and Horace B. Angell, and that an accounting ought to be had," and decreed a reference to a commissioner to take an account and report, "reserving to the court the right to declare the particular rights of the parties in said partnership until the making and entry of the final decree in said cause." The complainant asserts that the first decree, although in some respects interlocutory, is final upon the question of copartnership. As we have found that the proof sustains the claim of copartnership, it is unnecessary to consider that question.

2. The Copartnership. In the brief statement made we have not attempted to discuss the testimony, or indicated our conclusions upon disputed questions. The first important inquiry is whether a copartnership ever existed, defendant's claim being that what passed in relation thereto amounted to no more than an agreement that the parties should at some future time enter into a copartnership, the terms of which were never settled. Angell purchased the premises on a contract May 2, 1901. He obtained his deed May 10th, and recorded it May 14th, of the same year. Prior to July 12, 1902, Chase lived in Ithaca, Mich., where he owned and published a newspaper.

In May or June, 1901, Angell who had known Chase from boyhood, called upon him and told him of his investment, that it was near the Agricultural College, and that he contemplated platting the property, and improving it with a view to the sale of lots. Early in June they had another talk and a proposal of copartnership was made. Subsequently they met at Lansing, and talked the matter over, and there is evidence that the terms of a copartnership were agreed upon. This was disputed by the defendant, but the circuit judge was convinced of its

truth, and we are of the same opinion. He fixed the date of the agreement as July 1, 1901. From that time conferences were frequent, and correspondence voluminous in regard to the project. Some time was spent over the question of sewers for the territory. Complainant visited Lansing several times in relation to the work of platting the premises, and went to Detroit in the effort to negotiate a copartnership loan on the premises. He moved upon the premises, and began work in clearing them up, and in building a store, ice-house, and other buildings at joint expense. They made a lease of the store in the name of Angell & Chase, and did many other things for the common interest, among which were their dealings and loans made at the City National Bank at Lansing under the same name. They filed a bill as copartners in relation to a controversy with the college authorities, and this bill alleged that they were copartners. We need not further quote the evidence which leads to the conclusion stated. In short, we are of the opinion that the parties not only agreed that they would go into partnership upon equal terms, but that they actually entered upon the business of the copartnership, each doing work, putting in funds, improving the premises, and incurring joint indebtedness in the firm name. That they understood that they were copartners in a general way, is not inconsistent with an intention to put their arrangement in writing, with such modifications as they should afterward agree upon, and, like any other partially performed oral contract for the sale of lands, the statute of frauds is not an insuperable objection to treating the lands as part of the assets, under such circumstances as have been shown in this cause.

3. Lot 80. Among the lots platted was a tract of 15 acres or so, called "Lot 80," and at one time Mr. Angell expressed a desire to withhold that from copartnership control. Mr. Chase replied that he thought that could be arranged, but the terms were never agreed upon. While this is true it is obvious that the complainant consented to

its withdrawal, upon fair terms, and while these were never agreed upon, equity requires that the arrangement be carried out, upon a reasonable division of values, as they then existed. From our examination of the testimony we conclude this to have been of more than the average value per acre of the lands, and we are not satisfied that the decree of the circuit judge should be modified in this respect.

4. Items of Account. The decree as to items allowed for the team furnished by McCloskey, for time spent by complainant when upon trips, and the disallowance of defendant's claim for board furnished to complainant's wife, will be affirmed. We think that his conclusions in relation to allowance to be made for the services rendered by the respective parties is a reasonable and just one, and that it should not be disturbed. No deduction will be made from the items allowed defendant for changes in the septic tank and sewer.

5. Dower. We are also of the opinion that the court did not err in holding that Mrs. Angell had an inchoate right of dower in said lands, not only upon the ground which he decided it, but for the further reason that before the parties fairly entered upon the performance of the agreement, which alone could take the contract out of the statute of frauds, Angell had again taken up his residence in Michigan and reacquired a domicile here if he ever lost it. Angell's representations before the board of review cannot have the effect of an estoppel, or otherwise affect the rights of his wife, if there was anything improper in it, which may be doubtful.

6. Homestead. The defendants' brief makes claim for an allowance by way of homestead, it appearing that Angell and wife resided in temporary quarters upon the premises on their return from New York. The decree is silent upon the subject, leading us to infer that the question was not raised in the circuit court, but neither answer makes such a claim, and we find no proof warranting the belief that a homestead was established before the parties

entered upon the performance of the copartnership agreement.

The result of the foregoing discussion is the affirmation of the decree of the circuit court in the matter of accounting. It leaves the disposition and division of the property to be determined. The learned circuit judge was of the opinion that it was not advisable to attempt a partition of the premises, and decreed that the premises be sold subject to the rights of dower in Mrs. Angell. It is contended by defendants' counsel that the interest of Mrs. Angell cannot be divested through the husband's alienation of an undivided interest in the land and that the law does not permit of the application of the doctrine of commutation of dower in this case. It is a general rule at common law that the husband cannot, by any act of his, prejudice his wife's right of dower, and this rule has been adhered to in Michigan. In several cases it has been held, and such is believed to be the rule generally adhered to in the United States, that land owned by copartners, as part of their firm assets, where each has a legal title, is held in common subject to a liability to have it applied to partnership obligations and accounting, each having a lien on the interest of his copartner for any balance due him, and that when the firm is dissolved, or can no longer continue business, real estate constituting part of its assets may be divided by compulsory partition, if it be shown that it will not be required to satisfy liabilities of the firm. *Roberts* v. *McCarty*, 9 Ind. 18; *Danvers* v. *Dorrity*, 14 Abb. Prac. (N. Y.) 208; *Patterson* v. *Blake*, 12 Ind. 436; *Jackson* v. *Deese*, 35 Ga. 88.

And in *Gray* v. *Palmer*, 9 Cal. 639, it was held that a surviving copartner might, by one suit in equity, obtain a decree declaring realty, the title to which stood in the name of his deceased copartner, to belong to the copartnership, directing a sale of so much thereof as was necessary to pay partnership debts, and making a partition of the remainder. Upon this subject, the court say:

"As between the partners, the partnership property may consist either of real or personal estate, or of both, and in each case their ultimate rights are the same. And it does not matter in whose name the real estate may be held, he is only a trustee for the partnership, and the real estate, for the purpose of disposal and distribution, is to be treated as personal estate. An exception may be stated, as where there are no partnership debts to pay, in which case the real estate should be partitioned if practicable. (Story on Partnership, §§ 83, 92, 93.) And this being the true character of partnership real estate, the surviving partner has an equitable lien upon it for his indemnity against the debts of the firm, and for the balance that may be due to him from the firm. (Collyer on Partnership, § 135 and note.) For the same reason, the widow and heirs have only an interest in the net partnership property after all the partnership debts are discharged."

For a general discussion of the subject, see Freeman on Cotenancy and Partition, § 443.

In *Tenney* v. *Simpson*, 37 Kan. 353, it was said that upon dissolution of the partnership and a full payment of its debts, the partners became tenants in common of its real estate, and the court will decree a partition.

In this case, while these parties are not technically cotenants in a legal title, in equity, they are such to all intents and purposes. While the legal title is in Angell, he holds it in trust for the uses of the firm, its creditors, and his copartner, and equity will compel such conveyance, as the necessities of the business, and the rights of his copartner require. We have two statutes that confer the power upon courts of justice, to compel persons having dower interests, to be satisfied with a provision in lieu thereof, *first,* 3 Comp. Laws, § 8953, which applies to proceedings instituted by widows, to recover dower in lands which the husband has conveyed without his wife's concurrence, and *second,* 3 Comp Laws, § 11100, which covers cases of sales under judgments or decrees for partition. It provides:

"11100. SEC. 88. In all cases of sales under judgment or decree in partition, where it shall appear that any

married woman has an inchoate right of dower in any of the lands divided or sold, or that any person has any vested or contingent future right or estate in such lands, it shall be the duty of the court under whose judgment or decree such sale is made, to ascertain and settle the proportional value of such inchoate, contingent, or vested right or estate, according to the principles of law applicable to annuities and survivorships, and to direct such proportion of the proceeds of the sale to be invested, secured, or paid over in such manner as shall be judged best to secure and protect the rights and interests of the parties."

Were this a case where Angell had deeded a half interest in the land to Chase and Chase had filed a bill for partition, it would have been within the terms of the statute, and the court would have authority to sell the property, giving full title, and providing for Mrs. Angell's contingent interest, in one of the methods mentioned in the statute. We are of the opinion that this is none the less a case for partition, because it is based upon an equitable right which the court may compel Angell to turn into a legal title by conveyance. Equity has authority to partition equitable estates as well as legal. See 17 Am. & Eng. Enc. Law (1st Ed.), p. 684. No reason occurs to us for holding that section 11100 should not apply to a case where the bill is filed to partition equitable titles, and to compel conveyance to carry out the decree. The situation is such that a sale subject to dower rights would be likely to materially lessen the price obtainable for the land, for, in the hands of any one except Angell, the outstanding contingent estate would be an obstacle to the sale of lots, which would practically prevent it. This would give to Angell such an advantage at the sale as to enable him to deprive complainant of much of the profit on his venture, which should arise out of the increase in value of the property.

It is therefore, in our opinion, a proper case in which to apply this statute. The land was bought and, we assume, is still to be held, subject to purchase-money, and possi-

bly other mortgages, which underlie the right of dower. Mrs. Angell's right, therefore, is only in the equity of redemption, and it is upon this basis, and its value on July 1,1901, that the compensation must be made. It follows that some method must be devised to provide for (1) the mortgage; (2) the dower interest as it shall be ascertained; (3) the payment of the debts of the copartnership; (4) the balance which shall be found between the accounts of the copartners; (5) a division of the fund or land remaining (if all is not sold) between the copartners.

We are not sure that the record contains the testimony required to make the necessary computations, certainly we can obtain little aid from the briefs as to some of them. We think, therefore, that the case should be remanded for the circuit court to consider the proofs and such other testimony as may be offered, pertinent to such questions (provided that it shall deem any further testimony necessary, and permit it to be introduced), and make such other and further decree, not inconsistent with the decree of this court, as shall be just to the parties, unless upon the settlement of a decree in this court counsel can agree upon one, which will end the litigation here with the approval of this court. The complainant is entitled to the costs of both courts against the defendant, except such as apply solely to the partition proceedings, which should be paid from the property.

The prayer for enlarged solicitor's fees will be denied.

McALVAY, C. J., and GRANT, BLAIR, and MONTGOMERY, JJ., concurred.